CONSUMERS POWER COMPANY v PUBLIC SERVICE
COMMISSION

ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket Nos. 78-603, 78-604. Submitted November 15, 1978, at Lansing.
—Decided February 20, 1979.

Consumers Power Company filed proposed electric rates with the
Public Service Commission after the commission had deter-
mined that Consumers was entitled to a rate increase. Consum-
ers also requested in writing that the commission allow the
company to put the new rates into effect immediately upon
filing. The commission denied the request for immediate imple-
mentation, and scheduled further public hearings on the rates
pursuant to a request by the Attorney General. Consumers filed
suit against the Public Service Commission in Ingham Circuit
Court for a temporary injunction to allow it to put the new
rates into immediate effect. The Attorney General and the
Michigan Retailers Association intervened as party defendants.
The court granted the relief requested, but required Consumers
to file a bond to secure refunds in the event the Public Service
Commission should ultimately approve a lesser increase. The
rates subsequently were approved substantially as proposed.

The Attorney General and the City of Wyoming, which had

REFERENCES FOR POINTS IN HEADNOTES

[1] 64 Am Jur 2d, Public Utilities §§ 126-132, 282.

[2] 2 Am Jur 2d, Administrative Law §§ 583-585.

64 Am Jur 2d, Public Utilities §§ 126-132, 240, 282.

Formal requirements of judgment or order as regards appealability.
73 ALR2d 250.

[3] 2 Am Jur 2d, Administrative Law §§ 340, 343, 346, 747.

64 Am Jur 2d, Public Utilities § 264.

Formal requirements of judgment or order as regards appealability.
73 ALR2d 250.

Adequacy, as regards right to injunction, of other remedy for
review of order fixing public utility rates. 8 ALR2d 839.

[4] 2 Am Jur 2d, Administrative Law §§ 400, 583-585.

64 Am Jur 2d, Public Utilities § 264.

Formal requirements of judgment or order as regards appealability.
73 ALR2d 250.

Adequacy as regards right to injunction, of other remedy for review
of order fixing public utility rates. 8 ALR2d 839.

intervened in the rate hearings, separately appealed to the Ingham Circuit Court the commission's order approving the rates. The Michigan Retailers Association and the City of Grand Rapids intervened in this appeal as party plaintiffs, and Consumers intervened as a party defendant.

The parties ultimately entered into a stipulation in which the issues presented in these two cases as well as those in three other related cases, all five of which were consolidated by the circuit court, were resolved, with the exception of the question of whether Consumers was entitled to retain the added revenues it had received from the time of the circuit court's temporary injunction allowing it to effectuate the higher rates until the time of the commission's final order approving the new rates. On this issue the circuit court, Ray C. Hotchkiss, J., granted summary judgment in favor of Consumers Power, finding that the circuit court had jurisdiction to enter the injunction under the court's general equitable jurisdiction and that Consumers had exhausted its administrative remedies. The Attorney General, the City of Wyoming, the City of Grand Rapids, and the Michigan Retailers Association appeal. *Held:*

1. The circuit court had statutory appellate jurisdiction to grant the injunction. The Public Service Commission's denial of the request to put the increased rates into effect was an "order fixing rates" which was reviewable by the court under its appellate jurisdiction.

2. Consumers Power had substantially complied with the statutory procedure necessary to invoke the Public Service Commission's authority to grant an immediate rate change, and the commission denied the request for an immediate change. Consumers had, therefore, exhausted its administrative remedies when it sought the injunction.

Affirmed.

1. Courts — Circuit Court — Jurisdiction — Public Service Commissions — Public Utilities — Statutes.

The Ingham Circuit Court has statutory appellate jurisdiction in an action to vacate and set aside an order of the Public Service Commission fixing utility rates on the ground that the rates are unreasonable or unlawful (MCL 462.26; MSA 22.45).

2. Public Service Commissions — Public Utilities — Circuit Court — Appeal and Error.

A denial by the Public Service Commission of a utility's request to place increased rates into effect pending final approval of the

rates is an order fixing rates and, therefore, is appealable to Ingham Circuit Court.

3. PUBLIC SERVICE COMMISSIONS — PUBLIC UTILITIES — RATE SCHEDULES.

A public utility must do two things to invoke the Public Service Commission's power to grant an immediate change in the utility's rate schedules: (1) introduce facts to support its petition for a rate change, and (2) make a written request for immediate relief (MCL 460.6a; MSA 22.13[6a]).

4. PUBLIC SERVICE COMMISSIONS — PUBLIC UTILITIES — ADMINISTRATIVE LAW — EXHAUSTION OF REMEDIES — STATUTES.

A public utility substantially complied with statutory requirements, sufficient to invoke the Public Service Commission's authority to grant an immediate rate change, where the utility, following past practices, did not formally move the commission to exercise its discretion under the statute but supported the utility's written request for immediate effect of the new rates by affidavit showing that the rates were in accord with an earlier order of the commission and stating that the distribution of rate increases was fair and reasonable; the commission's denial of the utility's request completed the administrative process, leaving the utility free to request injunctive relief in circuit court (MCL 460.6a; MSA 22.13[6a]).

*Lawrence B. Lindemer, Allen B. Bass,* and *David A. Mikelonis,* and *Loomis, Ewart, Ederer, Parsley, Davis & Gotting* (by *George W. Loomis* and *Harvey J. Messing),* for Consumers Power Company.

*Walter V. Kron,* Assistant Attorney General, for the Michigan Public Service Commission.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Hugh B. Anderson, Roderick S. Coy* and *Albert Ernst,* Assistants Attorney General, for the Attorney General.

*William J. Garlington,* for the City of Wyoming.

*George A. Weible,* for the City of Grand Rapids.

*MacLean, Seaman, Laing & Guilford* (by *Kenneth Laing* and *Kathleen Opperwall)*, for the Michigan Retailers Association.

Before: CYNAR, P.J., and R. B. BURNS and M. B. BREIGHNER,* JJ.

M. B. BREIGHNER, J. July 15, 1968, Consumers Power Company filed with the Michigan Public Service Commission a petition to increase the company's electric rates. After public hearing the commission concluded that Consumers Power was experiencing a revenue deficiency and was entitled to a rate increase of $16,514,000. The commission directed Consumers Power to file rates and schedules designed to achieve that increase.

On October 3, 1969, Consumers Power filed comprehensive rate schedules and also in writing prayed "[t]hat the Commission issue an order authorizing the electric rate schedules * * * to become effective for service supplied on and after October 3, 1969". Under prior practice, apparently, the utility had been allowed to charge increased rates as soon as the commission determined that the utility was experiencing a revenue deficiency.

The same day, instead of approving the company's request to put the proposed rates into immediate effect, the commission ordered a second phase of public hearings on the rate schedules, to begin October 6, 1969. The break with apparent past practice was explained in the commission's order. The order related that two days before Consumers Power filed its schedules, the Attorney General had requested public hearings on the proposed rates. In a later pleading the commission also

---

* Circuit judge, sitting on the Court of Appeals by assignment.

stated that it was without statutory authority to grant the company's request.

On October 6, 1969, Consumers Power commenced this action in circuit court for temporary injunctive relief to allow it to put the new electric rates into immediate effect. Consumers Power filed the complaint principally to invoke the circuit court's original equity jurisdiction. Alternatively, the complaint was filed as a statutory appeal pursuant to § 462.26 of the compiled laws. MCL 462.26; MSA 22.45. On October 21, 1969, the circuit court granted the relief requested. In its order the court required the utility to file a bond to secure a refund of the increases should the commission finally provide for the collection of lesser rates. The circuit court reasoned that the commission's failure to make such an order was unreasonable.

On April 20, 1970, the Public Service Commission entered its final rate order approving rate schedules substantially as proposed by the company and collected pursuant to the injunction.[1] In the interim between the circuit court's grant of injunction and the commission's final rate order the company collected $6,623,417 in increased electric rates. The issue raised on this appeal is whether Consumers Power is entitled to keep that money.[2]

The Attorney General and other intervening parties have proffered several reasons why the

---

[1] The electric rates finally approved by the commission differed from the company's rate schedules with respect to three-unit and four-unit apartments. An appropriate refund of overcharges was made pursuant to the circuit court's order and is not in contest here.

[2] The present appeal is actually the final phase of a rate controversy that has continued in this Court and the circuit court since the commission's final order in 1970. All other questions have been settled by stipulation or appeal, see *e.g., Consumers Power Co v Public Service Comm,* 65 Mich App 73; 237 NW2d 189 (1975).

interim rates collected must be refunded. Only two of their theories merit discussion. First is the contention that the circuit court lacked general equity or statutory appellate jurisdiction to issue the temporary injunction that authorized Consumers Power to collect interim rate increases. Second is the claim that the circuit court erred in assuming jurisdiction before Consumers Power had exhausted its administrative remedies.

On review of its earlier order the circuit court has held that it had jurisdiction to enter the preliminary injunction as part of its general equitable jurisdiction and that Consumers Power had exhausted its administrative remedies. We affirm for the reasons stated below.

### *The Circuit Court had Statutory Appellate Jurisdiction to Enter a Preliminary Injunction Allowing Consumers Power Company to Collect Interim Rate Increases.*

It is unnecessary to decide in this case whether the circuit court had original equity jurisdiction to grant the preliminary injunction at issue.[3] By statute the Legislature has granted the circuit court appellate jurisdiction in any action to vacate and set aside any order fixing rates on the ground that the rates are unreasonable or unlawful. MCL

---

[3] Appellants cite *General Telephone Co v Public Service Comm,* 341 Mich 620; 67 NW2d 882 (1954), *Michigan Bell Telephone Co v Ingham Circuit Judge,* 325 Mich 228; 38 NW2d 382 (1949), and *Michigan Gas Utilities Co v Public Service Comm,* 27 Mich App 411; 183 NW2d 619 (1970), for the proposition that while the circuit court has general equity jurisdiction to grant the relief sought by Consumers Power in this case, such relief may never be sought nor granted except within the framework of § 462.26. Consumers Power reads these cases as preserving the circuit court's general equitable powers on statutory appeal, but not diminishing its original equity jurisdiction except to the extent such jurisdiction is invoked to evade the statutory requirement for seeking judicial review within 30 days of a commission order.

462.26; MSA 22.45. The denial of a request to place increased rates into effect pending final approval is an "order fixing rates". Accord, *Mountain States Telephone & Telegraph Co v Arizona Corporation Comm,* 331 F Supp 1167 (D Ariz, 1971). As reasoned by the Arizona district court, "A 'No' answer is just as much rate fixing as an unreasonably low 'Yes' ". *Id.* at 1170.

By its order of October 3, the Public Service Commission denied the utility's request for immediate relief. As related above, the utility's complaint for injunction invoked the circuit court's appellate jurisdiction to review that order. The circuit court granted the injunction on grounds authorized by the statute.

*Consumers Power Company had Exhausted its Administrative Remedies before Seeking Relief in the Circuit Court.*

Appellants contend that Consumers Power, before seeking a court injunction, should have sought immediate relief from the Public Service Commission under § 460.6a of the compiled laws. MCL 460.6a; MSA 22.13(6a). In pertinent part that section provides:

"When such utility shall have placed in evidence facts relied upon to support its petition or application to so increase its rates and charges, or to so alter, change or amend any rate or rate schedules, the commission, pending the submission of all proofs by any interested parties, may in its discretion and upon written motion by such utility make a finding and enter an order granting partial and immediate relief, after first having given notice to the interested parties within the service area to be affected in the manner ordered by the commission, and after having afforded to such interested parties reasonable opportunity for a full and

complete hearing: Provided, That no such finding or order shall be authorized or approved ex parte, nor until the commission's technical staff has made an investigation and report: * * *."[4]

On its face the provision shows that a public utility must do two things to invoke the Public Service Commission's power to grant an immediate change in rate schedules. First, the utility must introduce facts to support its petition. Second, it must make a written request for immediate relief. Before exercising its discretion to grant such relief, the commission must give notice to interested parties and afford them a hearing. Also the commission's technical staff must investigate and report. But see *Attorney General v Public Service Comm,* 63 Mich App 69, 77-78; 234 NW2d 407 (1975).

The apparent statutory purposes are threefold. First, § 460.6a affords utilities some form of immediate or partial relief pending a full-blown public hearing and final rate determination.[5] Secondly, it assures that the decision to grant or deny interim relief will be made in the first instance by an expert administrative body, taking advantage of its legislative-like powers of investigation. Finally,

---

[4] Consumers Power Company contends that § 460.6a only pertains to immediate rate relief pending a final commission determination of revenue deficiency. By its own language, however, the statute pertains to any order sought by a utility "to increase its rates and charges *or to alter, change or amend any rate or rate schedules* * * *". MCL 460.6a; MSA 22.13(6a).

[5] Because the Public Service Commission is precluded from establishing retroactive rates to correct injustice caused by a delay in establishing rates for the past, *Michigan Bell Telephone Co v Public Service Comm,* 315 Mich 533; 24 NW2d 200 (1946), our Supreme Court has noted that "[e]very day a warranted rate increase is withheld is a day in which justice has been denied * * *". *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624, 637; 209 NW2d 210 (1973).

the section affords due process to all affected parties. To preserve this balance of purposes, the judiciary should stay its hand in the rate-making process until the administrative remedy provided through § 460.6a has been exhausted.

Rote compliance with the conditions stated in § 460.6a, however, is not necessary to achieve the statutory purposes. Thus, for example, this Court has relaxed the "investigation and report" requirement when literal enforcement of that condition would render the § 460.6a remedy practically useless. *Attorney General v Public Service Comm, supra.*

In this case Consumers Power Company sought interim relief from the Public Service Commission before requesting a court injunction. Following past agency practices, the company did not formally move the commission to exercise its discretion under § 460.6a. The company's "Filing of Rate Schedules and Request for Approval Thereof", however, was supported by affidavit. The affidavit showed the schedules were in accord with the commission's earlier order concerning rate deficiencies. It also stated that the distribution of rate increases among consumer classifications was fair and reasonable. As related above, the prayer to put the new schedules into immediate effect was written.

Under the circumstances here presented, we find this to be substantial compliance with § 460.6a, sufficient to invoke the Public Service Commission's authority to grant immediate relief. The commission's order of October 3 implicitly denied such relief and thereby completed the administrative process. Affected parties were afforded due process at the subsequent injunction hearing.

Affirmed. No costs, a public question.