Wade **TENNYSON** et al., Plaintiffs,

v.

**GAS SERVICE COMPANY** and Kansas Gas and Electric Company, Defendants.

Civ. A. No. W–5084.

United States District Court, D. Kansas.

Oct. 23, 1973.

Thomas A. Wood, Wichita, Kan., for plaintiffs.

Kassebaum & Rees, Wichita, Kan., Richard C. Byrd, Ottawa, Kan., Donal D. Guffey, Kansas City, Mo., for Gas Service Co.

Ralph Foster, Wichita, Kan., for Kansas Gas & Electric Co.

## MEMORANDUM AND ORDER

THEIS, District Judge.

Through this class action, plaintiffs seek monetary, declaratory and injunctive relief from late charge assessments made by the defendants. Jurisdiction is premised on 28 U.S.C.A. § 1343(3), (4). Further, the Court is requested to exercise pendent jurisdiction over related claims arising under the Constitution of the State of Kansas and various Kansas statutes.

Both defendants, levy on their customers an additional charge for failure to pay within fifteen days of the billing date. On bills of less than $200.00, the present rate is 5%. Defendants label this assessment the "gross monthly bill;" however, the charge is separate and apart from the residential service rated, which is titled the "net monthly bill." Plaintiffs assert the late charge is actually an interest charge and is confiscatory and constitutes an appropriation of their property without due process of law in violation of the Fourth, Fifth and Fourteenth Amendments. Furthermore, since the rate on bills in excess of $200.00 is only 2%, and since defendants allegedly adopt arbitrary billing periods, plaintiffs contend the late charge arbitrarily discriminates against them and denies them equal protection under the law. In addition, plaintiffs state the late charges violate rights guaranteed them by the Kansas Bill of Rights and violate K.S.A. § 16–201 et seq., and K.S.A. § 66–107 et seq. They seek a declaratory judgment that the late charges are unreasonable, confiscatory and discriminatory in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and are further violative of Sections 1, 15 and 18 of the Bill of Rights of the Constitution of the State of Kansas and K.S.A. § 66–107 et seq.; and finally that the late charges are usurious and violate K.S.A. § 16–201 et seq. Plaintiffs also seek an injunction prohibiting future assessments and an accounting and reparation of all late charges assessed plaintiffs and members of their class during the past five years. Relief is sought under the provisions of 28 U.S.C.A. § 2201 and 42 U.S.C.A. § 1983.

Both defendants have moved to dismiss the action on the ground that the Court is without jurisdiction over the subject matter because the action falls within the provisions of the Johnson Act, 28 U.S.C.A. § 1342. The Gas Service Company moves to dismiss on the additional grounds that the complaint fails to state a claim under the Civil Rights Act and that the plaintiffs have failed to join an indispensable party, namely, the Kansas Corporation Commission. Having carefully examined the arguments and authorities submitted by the parties, the Court makes the following findings and orders.

## JURISDICTION UNDER THE CIVIL RIGHTS ACT

It is contended by the Gas Service Company that the plaintiffs' complaint fails to state a claim for relief under the Civil Rights Act. Its contention is twofold: (1) neither of the defendants acted under color of state law, and (2) plaintiffs fail to allege facts constituting denial of a constitutional right. With respect to the assertion that neither defendant acted under color of state law, this Court, in Stanford v. Gas Service Company, 346 F.Supp. 717 (D.Kan.1972), has previously determined that public utilities which enjoy a complete monopoly on the supply of an essential commodity to citizens of this

state, and whose rates, method of and right to do business, are solely under state control, act by or under color of state law for purposes of § 1983. See also Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir. 1972); Bronson v. Consolidated Edison Co., 350 F.Supp. 443 (S.D.N.Y.1972), and Palmer v. Columbia Gas Co., 342 F.Supp. 241 (N.D. Ohio 1972). Likewise, the Court finds the plaintiffs' complaint alleges facts sufficient to meet the second requirement that there be a denial of a constitutional right.

▮▮ Ever since the decision in Chicago, Milwaukee and St. Paul Ry. v. Minnesota, 134 U.S. 418, 10 S.Ct. 462, 33 L.Ed. 970 (1890), it has been settled that the action of a rate-setting body is subject to judicial review on the question of whether it results in confiscation and, therefore, deprivation of property without due process. A. & M. Brand Realty Corp. v. Woods, 93 F.Supp. 715 (D.D.C.1950). Thus, plaintiffs' assertion that the late charge is unreasonable and confiscatory suffices to allege denial of a constitutional right. Plaintiffs' claim that the late charges arbitrarily discriminate against them also suffices for purposes of § 1983. It is enough that they claim the disparity between the 5% rate on bills for less than $200.-00, and the 2% rate on bills in excess of that figure, and the employment of arbitrary billing periods, are based on grounds unrelated to, or unreasonable in light of the statutory purpose, and arbitrarily discriminate against them. See Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Bjarsch v. DiFalco, 300 F.Supp. 960 (S. D.N.Y.1969). Plaintiffs' complaint therefore meets the two requirements necessary to establish a claim under the Civil Rights Act, 42 U.S.C.A. § 1983. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Endicott v. Van Petten, 330 F. Supp. 878 (D.Kan.1971).

## JURISDICTION UNDER THE JOHNSON ACT

The provision in each defendants' rate schedule describing the late charge assessment is purported to have been approved by the Kansas Corporation Commission. The Gas Service Company asserts its late charge was included in the rate schedule approved by the Kansas Corporation Commission's order of February 21, 1968, in Docket No. 82,760–U. The Kansas Gas and Electric Company states its late charge assessment was included in the rate schedule approved by the Kansas Corporation Commission's order of June 28, 1972, in Docket No. 82,581–U. Since the late charge assessments have been approved by the Kansas Corporation Commission, defendants vigorously contend the Johnson Act proscribes the Court's jurisdiction. The Johnson Act, 28 U.S.C.A. § 1342, provides as follows:

"The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and

(4) A plain, speedy and efficient remedy may be had in the courts of such State."

▮ Having carefully considered the legislative history of the statute, the Court concludes that it was not intended to apply to all action challenging public utility rates approved by a state administrative agency, but instead was enacted for the single purpose of remedying the anomaly whereby a utility company could avail itself of both the state and

federal courts simultaneously for the purpose of challenging a rate order.

During the latter decades of the Nineteenth Century and the early years of the Twentieth, many states undertook the regulation of rates charged by public utilities. See generally, "Comment, Limitation of Lower Federal Court Jurisdiction Over Public Utility Rate Cases," 44 Yale L.J. 119 (1934). At first, rates set by state legislatures were held not to be subject to judicial review, but in Chicago, Milwaukee and St. Paul Ry. Co. v. Minnesota, supra, the Supreme Court ruled that the reasonableness of rates set by a state legislature were reviewable in order to protect utilities from a deprivation of property without due process of law. Thus, the reasonableness of rates became a constitutional question under the Fourteenth Amendment. Initially, review in federal court was hindered due to uncertainty about the amenability of state officers to suit. With the decision in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it became possible for a utility to contest any rate regulation in the federal courts. The availability of review of rate orders in both the federal and state courts led inevitably to abuse.

A utility company seeking to contest a rate order was able to pursue simultaneous action in both the state and federal courts, and having ascertained which forum was the more hospitable, could select it and dismiss the other action. This gave the utility company an unfair advantage and, in addition, was exceedingly expensive and caused long delays. Exacerbating this situation was the fact that review in federal court was de novo, i. e., it was often necessary to completely reproduce the investigation previously conducted by the state agency. Thus, review in federal court was extraordinarily expensive and time-consuming. And, as the Congress recognized, the brunt of the expense was ultimately borne by the consumer.

The debates in the Senate clearly reveal that the Act was intended only as a limitation on the avenues of review available to utility companies. The purpose of the Act was succinctly stated by Senator Johnson:

"The object [of S.752] is to make them [the utility companies] subject to the jurisdiction of the laws of our States; to give them their rights in every instance to the trial of the question of fact first before the public-utility commission, to give them every legal right they have, and if any right that is guaranteed by the Constitution is infringed upon at all, then, of course, the legal right of appeal ultimately from the highest tribunal in the State to the United States Supreme Court. 78 Cong.Rec. 1918 (1934)."

The Johnson Act, then, was not intended as a broad proscription of federal jurisdiction, but is a narrow measure intended only to prevent public utilities from by-passing procedures enacted by the states for review of rate orders. It was not intended to apply to action by consumers, whose interests were the base concern underlying the Johnson Act, asserting the unconstitutionality of a rate charged by a utility company.

However, there are other legal considerations which govern this Court's action and indicate the Johnson Act does apply in this Circuit to actions of this kind. The rule of *stare decisis*, and this Court's obligation to follow it, as indicated by decisions of the 10th Circuit Court of Appeals, preclude present jurisdiction over this action under the Johnson Act.

In General Investment Service Corp. v. Wichita Water Co., 236 F.2d 464 (1956), the Tenth Circuit, in an opinion by Judge Huxman, specifically held 28 U.S.C.A. § 1342 (the Johnson Act) precluded a federal district court from taking jurisdiction of an action in which a

customer of a water company whose rates were authorized by city ordinance was barred from challenging a surcharge on water rates. It is fairly apparent from reading this case that the Circuit Court probably neither contemplated nor had the legislative history of the Johnson Act argued before them. They further finally based their opinion of dismissal on the federal-state comity theory. As stated, this Court is obligated to follow his own Circuit, even though he may believe the better legal view to be otherwise. The Court has pointed out the legislative history in case our present Circuit Court should desire to overrule its precedent in case of an appeal.

Likewise, although there exists a split of authority, other federal courts have held that the Johnson Act is a bar to consumers seeking to enlist jurisdiction of the federal courts to enjoin state administrative action on rates of public utility companies. It would appear that the words of the statute, despite its legislative history and perhaps true intention, are clear and unambiguous in proscribing federal court jurisdiction under the four conditions of the Act. Here, condition (1) is satisfied because jurisdiction is based solely by plaintiffs on federal constitutional repugnance of the order authorizing the late charge. Assuredly, the K.C.C. orders as to either utility defendant do not interfere with interstate commerce. No assertion is made that the orders establishing the late charges were not made after reasonable notice and hearing at state administrative levels. Lastly, the fourth condition exists in that a plain, speedy and efficient remedy may be had in the state courts of Kansas.

The Court must therefore conclude, on the basis of existing law, that the Johnson Act precludes his jurisdiction. Since such a ruling will dispose of this action, the Court does not reach any other contentions made by the parties.

It is therefore ordered that the defendants' motion to dismiss this action be, and the same is hereby, sustained.